# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0585-20

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

K.R.,

     Defendant-Appellant,

and

BIOLOGICAL FATHER of
Z.R., whomever he may be,

     Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF Z.R.,
a minor.

_____

Argued September 14, 2021 – Decided October 1, 2021

Before Judges Fisher, Currier, and DeAlmeida.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FG-07-0044-20.

Ryan T. Clark, Designated Counsel, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Ryan T. Clark, on the briefs).

Wesley Hanna, Deputy Attorney General, argued the cause for respondent (Andrew J. Bruck, Acting Attorney General, attorney; Jane C. Schuster, Assistant Attorney General, of counsel; Wesley Hanna, on the brief).

Louise M. Cho, Assistant Deputy Public Defender, argued the cause for minor (Joseph E. Krakora, Public Defender, attorney; Meredith Alexis Pollock, Deputy Public Defender, of counsel; Louise M. Cho, of counsel and on the brief).

PER CURIAM

Defendant K.R.[1] appeals from the October 14, 2020 order of the Family Part terminating her parental rights to her son Z.R. After a trial, Judge Nora J. Grimbergen issued a twenty-six-page written opinion finding that plaintiff Division of Child Protection and Permanency (DCPP) satisfied the four prongs of the best-interests-of-the-child test set forth in N.J.S.A. 30:4C-15.1(a), justifying termination of K.R.'s parental rights. We affirm.

---

[1] We identify defendant and other parties by initials to protect confidential information in the record. R. 1:38-3(d)(12).

I.

Judge Grimbergen's opinion reviewed the evidence in great detail. A summary of her findings of fact will suffice here. DCPP first became involved with K.R. in 2017 when she was admitted to a hospital with suicidal ideation. At that time, K.R. had custody of her infant daughter, who she conceded having pricked in the foot because she would not stop crying. K.R. was diagnosed with schizophrenia, bipolar disorder, and attention deficit hyperactivity disorder. She admitted hearing voices commanding her to harm herself and she was not compliant with her prescribed medications. DCPP substantiated the physical harm K.R. caused her daughter and that K.R.'s mental illness threatened the child's well-being.

K.R. ultimately agreed to live with her daughter in the home of an adult who would supervise her interaction with the child. She subsequently left that home and was admitted to a psychiatric hospital after she was found wandering around the neighborhood. The status of K.R.'s daughter is not before the court.

K.R. gave birth to Z.R. in 2018. DCPP received a referral expressing concern that K.R. would be unable to care for Z.R. When interviewed at the hospital, K.R. acknowledged her mental illness and noncompliance with

A-0585-20

medication. K.R. stated that she rented a room with only a couch and that she had no provisions for the child.

DCPP executed an emergency removal of Z.R. and placed the child in a non-relative resource home. In addition, the agency filed a complaint in the Family Part seeking the care and custody of Z.R.[2]

DCPP provided K.R. with liberal visitation rights with Z.R. She did not, however, make a consistent effort to visit the child. Although K.R. was unemployed, she stated that she missed visits with her son because she had to "take care of business." DCPP gave K.R. a bus pass to travel to visits with her son. K.R. admitted that she gave the pass to someone with whom she lived, depriving herself of transportation to scheduled visits.

K.R. relocated a number of times, staying in the homes of various friends or men with whom she was romantically involved. She did not obtain her own residence or arrange for suitable shelter for her and Z.R. She did not develop a realistic plan for reunification with her child. K.R. has never worked and her only income is social security benefits. She has, however, assigned those benefits to various people over the years, including to the relative of a boyfriend.

---

[2] K.R. did not identify Z.R.'s father. Although the unknown father was named as a defendant, he did not participate at trial or on appeal.

A-0585-20

In addition, K.R. admitted that she did not take her prescribed psychiatric medications or attend therapy. She stated that she did not feel she needed medication because she "has a TV and phone to block the voices in [her] head."

Although DCPP offered K.R. services, the record contains no evidence of her having successfully completed any program. She was terminated from therapy for noncompliance. She did not attend one-on-one parenting skills classes because, she stated, she did not want to be bothered. Her inconsistent attendance resulted in her termination from that program as well. On occasion, K.R. has said that she did not attend services because she was shopping or getting her hair done.

Z.R. underwent an early intervention assessment and was referred for physical and occupational therapy. He was prescribed a helmet to address the shape of his head. A second evaluation resulted in a referral for speech and motor skills therapy. He suffers from extreme tantrums, excessive crying, and an inability to get along with children his age or younger. DCPP has placed Z.R. in four resource homes, as some of his caregivers have been overwhelmed by the special attention he requires. Several placement options suggested by K.R. were investigated by DCPP. In each instance, either the person suggested

by K.R. as a resource parent rejected that proposal or DCPP found the placement to be inappropriate.

DCPP's plan is to arrange for Z.R.'s adoption. A DCPP employee testified at trial that the agency has had success in securing the adoption of children with needs similar to those of Z.R., but that placement options are limited before the child is free for adoption.

At trial, DCPP called an expert in psychology as it relates to bonding and parental fitness. He evaluated K.R. on more than one occasion and observed her visit with Z.R. The expert opined that K.R. has limitations managing her life, including an inability to deal with money, and that her prognosis for independent parenting is poor. He testified that when he asked K.R. how she would stop a child from crying, she responded "he would eat water." The expert found this answer significant because it was given after K.R. had been offered parenting skills classes. The expert testified that K.R. was not a viable parenting option now or in the foreseeable future. He opined that given K.R.'s thought and affective disorders, which are likely to manifest during times of increased stress, such as when taking care of a child, placing Z.R. with K.R. would create an unacceptable risk of harm to the child.

A-0585-20

The expert also opined that Z.R. had not developed a bond with K.R. because he does not view her as a consistent, healthy, and responsive parental figure. Instead, he opined, Z.R. views K.R. as a source of anxiety, based, in part, on the expert's observation of what he described as the child's twenty minutes of hysterical crying during a visit with K.R. The expert testified that K.R. had to be instructed on how to soothe a child and that her efforts to do so failed. He testified that each time the child looked at K.R. he cried. He opined that Z.R. would not experience any in-depth negative effect or enduring harm if K.R.'s parental rights were terminated. K.R. did not present expert testimony or any witnesses.

The trial court issued detailed findings with respect to each of the statutory prongs in N.J.S.A. 30:4C-15.1(a). The court found that: (1) K.R.'s parental relationship with Z.R. endangers the child's safety, health, or development because of K.R.'s untreated mental illness, cognitive limitations, and failure to create a realistic plan to house the child and provide for his care; (2) Z.R.'s behavioral issues heighten the risk of harm were he to be in K.R.'s care; (3) K.R. is unwilling or unable to address the risk of harm her parental relationship presents to Z.R., despite the reasonable efforts of DCPP to offer K.R. services related to the causes of that risk of harm; (4) the delay in permanent placement

will add to the harm Z.R. faces; and (5) termination of K.R.'s parental rights will not do more harm than good.

This appeal followed. K.R. argues that the trial court's findings of fact were incomplete or inadequate and that the court failed to consider the impact Covid-19 restrictions had on the services offered to K.R. The law guardian representing Z.R. supports the trial court's decision.

## II.

Our review of Judge Grimbergen's decision is limited and deferential. We will not disturb a trial judge's factual findings so long as they are supported by "adequate, substantial, and credible evidence." See N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 552 (2014). We defer to the judge's evaluation of witness credibility and to her expertise in family court matters. Ibid.

After carefully reviewing the record in light of the applicable precedents, we conclude that substantial credible evidence supports Judge Grimbergen's findings of fact and that her conclusions of law are sound. There is no basis for us to disturb her well-reasoned determination that DCPP established by clear and convincing evidence that termination of K.R.'s parental rights to Z.R. was warranted. The judge found credible both the factual testimony of the DCPP employee witnesses who explained DCPP's interactions with K.R. and the expert

who opined that K.R. was incapable of parenting Z.R. and that her parental rights could be terminated without enduring harm to the child. K.R. offers no convincing argument that the trial court erred in its credibility determinations.

We have also considered K.R.'s argument regarding the temporary interruption of in-person services during the Covid-19 health crisis and find them unpersuasive. The crux of the trial court's decision is that K.R. suffers from untreated mental illness, cognitive limitations, and an inability or unwillingness to address those issues, which render her unable to care for a child with challenging behavioral issues of his own. There is nothing in the record suggesting that the trial court relied on a finding that K.R. failed to attend in-person visitation or services that were, in fact, not available because of the restrictions associated with the State's health emergency.

We therefore affirm the October 14, 2020 order substantially for the reasons stated in Judge Grimbergen's comprehensive written opinion. K.R.'s additional arguments are without sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0585-20